UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN SOLORIO,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>W. SULLIVAN, et al.,<br><br>　　　　　Defendants. | **1:19-cv-00688-NONE-GSA-PC**<br><br>**ORDER FOR PLAINTIFF TO <u>EITHER</u>:**<br><br>**(1)　FILE A SECOND AMENDED COMPLAINT;**<br><br>**OR**<br><br>**(2)　NOTIFY THE COURT THAT HE DOES NOT WISH TO FILE A SECOND AMENDED COMPLAINT AND IS INSTEAD WILLING TO PROCEED ONLY WITH THE EXCESSIVE FORCE CLAIMS AGAINST DEFENDANTS OTTSMAN AND CHAVEZ FOUND COGNIZABLE BY THE COURT**<br><br>**THIRTY-DAY DEADLINE** |

**I.　BACKGROUND**

　　Adrian Solorio ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on April 30, 2019, in the United States District Court for the Northern District of California.  (ECF No. 1.)  On May 9, 2019, the case was transferred to this court. (ECF No. 7.)

On August 17, 2020, the court screened the Complaint and found that Plaintiff states cognizable claims against defendants Ottsman and Chavez for use of excessive force against Plaintiff in violation of the Eighth Amendment, but no other claims.  (ECF No. 17.) The court issued a screening order requiring Plaintiff to either file an amended complaint or notify the court of his willingness to proceed only on the cognizable excessive force claims against defendants Ottsman and Chavez.  (Id.)

On September 14, 2020, Plaintiff filed the First Amended Complaint, which is now before the court for screening.  28 U.S.C. § 1915.  (ECF No. 18.)

## II.     SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal

///

conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

### III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Correctional Institution (CCI) in Tehachapi, California, in the custody of the California Department of Corrections and Rehabilitation where the events at issue in the First Amended Complaint allegedly took place. Plaintiff names as defendants W. Sullivan (Warden), Lieutenant E. Barthelmes, Sergeant (Sgt.) Clayton, Sgt. Gratokoski, Sgt. Cardenas, Correctional Officer (C/O) I. Ottsman, C/O V. Chavez, Dr. Caldron, and S. Jeffrey (RN) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

Plaintiff has a mobility disability which affects his walking gait and balance. On August 10, 2018, Plaintiff was walking in the prison yard to the CCI library when defendants Sgt. Clayton, Sgt. Gratokoski, and Sgt. Cardenas ordered Guard Officers I. Ottsman and V. Chavez to approach Plaintiff and ask questions about his mobility by using discriminatory remarks about Plaintiff's balance and yelling obscenities, insults and jokes to cause Plaintiff harm. Defendants collectively agreed to handcuff Plaintiff and took him to a secluded spot. Plaintiff was escorted in handcuffs out of the yard and placed in a room next to medical by defendants Ottsman and Chavez. There, Plaintiff was thrown to the floor and punched and kicked by defendants Ottsman and Chavez for no reason. They said Plaintiff's balance was not good and he may be intoxicated. They continued with the severe physical brutality, but this time they were commanded with instructions by Sergeants Clayton, Gratokoski, and Cardenas on how to cause more pain to Plaintiff's body. Plaintiff was severely harmed and bleeding from the nose. Plaintiff stopped responding because of the concussion he suffered from the physical brutality. The same prison guards intentionally denied and delayed Plaintiff's access to medical treatment,. Even though he was bleeding and bruised all over his body, he was escorted to his cell without medical treatment.

Plaintiff did not commit any offense or break any law. Defendants had assumed that Plaintiff was intoxicated due to his mobility disability. Defendant Barthelmes was the Lieutenant with zero tolerance who used physical brutality on inmates. That was his policy agreed to by

1 Warden Sullivan who was responsible for the operations of CCI prison guards and failed to
2 protect a disabled Plaintiff. Defendants discriminated and collectively acted against Plaintiff
3 with deliberate indifference.
4     Defendants Dr. Caldron and RN Jeffrey denied Plaintiff medical care for his serious
5 medical needs after the excessive force incident on August 10, 2018, in order to aid the prison
6 guards, and also erased Plaintiff's medical records to help out their prison guard friends. Plaintiff
7 was bleeding from his nose, suffered a concussion, was bruised all over his body, and suffered
8 from terrible pain in his legs. Plaintiff was suffering from a disability to his legs due to a past
9 injury. He was a member of the Armstrong (Plata) protected class and was intentionally treated
10 differently without a rational relationship to a legitimate state purpose.
11     Dr. Caldron and Nurse Jeffrey personally acted together to delay Plaintiff's medical
12 treatment. Plaintiff immediately submitted a medical request which was ignored until August
13 21, 2018. Defendant Jeffrey was supposed to take a record of Plaintiff' injuries, but he did not
14 do it in order to aid Defendants. He erased Plaintiff's record and did not list Plaintiff's injuries
15 on the CDCR 7362 request. Dr Caldron saw Plaintiff after all and recommended strong pain
16 medications, but told Plaintiff not to continue with the lawsuit process for his own good.
17 Defendant Lt. Barthelmes interviewed Plaintiff and told him the same thing, to stop the lawsuit.
18 Chief Deputy Warden B. Cates [not a defendant] sent a report to Warden W. Sullivan who did
19 nothing about his prison guards. Plaintiff was still receiving threats by Defendants at CCI.
20 Warden W. Sullivan failed to supervise or train the prison guards.
21     Defendant Lt. Barthelmes failed to protect Plaintiff and should have known that his prison
22 guards – defendants Clayton, Gratokoski, Cardenas, Ottsman, and Chavez -- used physical
23 brutality on Plaintiff creating an unreasonable risk of serious harm to Plaintiff who was disabled.
24 Defendants acted collectively and personally against Plaintiff with evil intent. Defendants
25 Ottsman and Chavez discriminated against Plaintiff for his mobility disability. All of the named
26 Defendants acted with deliberate indifference causing Plaintiff to suffer severe pain and
27 emotional distress.
28 ///

As relief, Plaintiff requests a declaratory judgment, compensatory and punitive damages, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479

F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Personal Participation

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676-77.

In the court's prior screening order, issued on September 11, 2020, Plaintiff was cautioned not to refer to conduct or actions by "Defendants" as a group and advised to focus on individual named Defendants' actions to show that each Defendant personally acted against him. Plaintiff has not followed this advice in the First Amended Complaint. He alleges that Defendants "collectively" acted or made decisions, "collectively" told the correctional officers how to cause pain to Plaintiff when attacking Plaintiff, and "collectively" denied Plaintiff medical care. Plaintiff cannot state a claim against Defendants in this manner. Plaintiff must name each defendant individually and explain what that one defendant said or did that caused a violation of Plaintiff's rights. Plaintiff must "set forth specific facts as to each individual defendant's" acts which caused a deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff shall be granted leave to file a Second Amended Complaint to cure the deficiencies in his claims.

### B. Excessive Force – Eighth Amendment

What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always

violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states cognizable claims against defendants Ottsman and Chavez for use of excessive force against Plaintiff in violation of the Eighth Amendment.

Plaintiff may be able to state claims for excessive force against Defendants Clayton, Gratokoski, and Cardenas for allegedly ordering Ottsman and Chavez to use of excessive force, but Plaintiff has not as yet alleged facts demonstrating what each of the Sergeants said or did to encourage the excessive force against Plaintiff.  The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation, or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44. Here, there are no facts explaining how Warden Sullivan could have protected Plaintiff from the attack, such as when Chief Deputy Warden B. Cates sent to Warden Sullivan

a report about the attack on Plaintiff—nor facts about what was contained in the report. If the report was not sent to Sullivan until after the attack, the report was of no use to protect Plaintiff from the attack. To state a claim for excessive force against the Sergeants, Plaintiff must allege what each of them said or did to set the excessive force incident in motion. Plaintiff shall be granted leave to file a Second Amended Complaint stating facts, about what each Sergeant, by name, did. Plaintiff must describe what he saw or heard.

### C. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Id. at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S.

825, 837 (1970). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff fails to state a cognizable medical claim against any of the Defendants. Plaintiff has shown that he had a serious medical need because he alleges that he suffered a concussion, injury to his legs, a bloody nose, and other injuries. However, Plaintiff fails to show that defendant Dr. Caldron or defendant Jeffrey knew about his injuries, understood that he was at substantial risk of serious harm to his health, and yet consciously disregarded the risk or otherwise acted unreasonably, causing Plaintiff injury. Plaintiff alleges that he was denied medical care, but then he alleges that Dr. Caldron saw him and recommended strong pain medications. Plaintiff also alleges that defendant Jeffrey erased Plaintiff's medical record, which, without more, does not support a medical claim.

The court requires more information before Plaintiff can state a cognizable medical claim. How did Plaintiff know the nurse erased medical records to help his friends? What did the doctor and nurse do that delayed Plaintiff's medical care? How does Plaintiff know that each of them knew about his injuries and the serious risk to Plaintiff's health, and how was their response unreasonable?

Therefore, Plaintiff fails to state a medical claim against any of the Defendants.

///

///

### D. Equal Protection -- Discrimination

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"' (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff is advised that mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even verbal threats, without more, do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff has not alleged facts showing what was discriminatory about the attack against him. What did each Defendant say or do that discriminated against Plaintiff? Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates, without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

///

///

### E. Failure to Protect

Plaintiff alleges that defendants Sullivan and Barthelmes failed to protect him from the August 10, 2018 attack.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. <u>Farmer</u>, 511 U.S. at 842; <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that Lt. Barthelmes should have known that his prison guards – defendants Clayton, Gratokoski, Cardenas, Ottsman, and Chavez -- used physical brutality on Plaintiff. As for defendant Sullivan, Plaintiff alleges that he received a report from Chief Deputy Warden B. Cates [not a defendant], and defendant Sullivan did nothing about his prison guards. Plaintiff has not provided sufficient information to state a failure-to-protect claim against defendant Sullivan, nor Lt. Barthelmes.

Thus, Plaintiff fails to state a claim against defendant Barthelmes or defendant Sullivan for failing to protect him from attack on August 10, 2018.

### F. **Armstrong Protected Class / ADA Claim**

Plaintiff claims that he was a member of "the Armstrong (Plata) protected class," implying that this status offers him protection from discrimination. (1st Amended Compl., ECF No. 18 at 5.) <u>Armstrong v. Davis</u>, 295 F.3d 849 (9th Cir. 2001) was brought by a class of prisoners and parolees suffering from disabilities, and the <u>Armstrong</u> court found that the California Board of Prison Terms regularly discriminated against disabled prisoners and parolees during its parole and parole revocation hearing processes, which violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act. In <u>Brown v. Plata</u>, 563 U.S. 493 (2011), the United States Supreme Court affirmed the judgment of a three-judge district court requiring California to reduce its prison population.

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. The elements of a cause of action under Title II of the ADA, 42 U.S.C. § 12131 *et seq.,* are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or

was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 590 (1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

To the extent that Plaintiff seeks to bring an ADA claim against Defendants in this case, Plaintiff's claim fails because Plaintiff has not demonstrated that he was subject to discrimination on the basis of a disability in the programs, services or activities of a public entity.

### G. State Law Claims

Plaintiff alleges that defendants Sullivan and Barthelmes failed to properly train and supervise correctional officers and other prison personnel who were subordinate to them. These are state law claims. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

Therefore, Plaintiff fails to state a claim against defendants Sullivan and Barthelmes for failure to train and supervise others.

### H. Declaratory Relief

Besides monetary damages and costs of suit, Plaintiff requests a declaratory judgment. A request for declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the First Amended Complaint against defendants Ottsman and Chavez for use of excessive force against Plaintiff in violation of the Eighth Amendment. However, Plaintiff fails to state any other cognizable claims against any of the Defendants upon which relief may be granted under § 1983.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted another opportunity to state cognizable claims against the Defendants. Plaintiff shall be required to either file a Second Amended Complaint or notify the court of his willingness to proceed only on the cognizable excessive force claims against defendants Ottsman and Chavez. Should Plaintiff choose to proceed only on the cognizable excessive force claims, the court shall initiate service upon defendants Ottsman and Chavez.

Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d. at 934. Plaintiff must set forth "sufficient factual matter . . . to

'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on April 30, 2019.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a Second Amended Complaint;
       Or
   (2) Notify the court that he does not wish to file an amended complaint and is instead willing to proceed only with the excessive force claims found cognizable by the court against defendants Ottsman and Chavez, and dismissing all other claims and defendants;

///

3. If Plaintiff chooses to amend the complaint, he shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:19-cv-

00688-NONE-GSA-PC; and

4. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated:   **September 25, 2020**                             **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE