UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN SOLORIO,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SULLIVAN, et al.,<br><br>　　　　Defendants. | 1:19-cv-00688-NONE-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS OTTSMAN AND CHAVEZ ON PLAINTIFF'S MEDICAL CLAIMS UNDER THE EIGHTH AMENDMENT; AND AGAINST DEFENDANTS OTTSMAN, CHAVEZ, CLAYTON, GRATOKOSKI, AND CARDENAS FOR USE OF EXCESSIVE FORCE UNDER THE EIGHTH AMENDMENT; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER § 1983**<br>**(ECF No. 21.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.　　BACKGROUND**

Plaintiff filed the Complaint commencing this action on April 30, 2019, in the United States District Court for the Northern District of California. (ECF No. 1.) On May 9, 2019, the case was transferred to this court. (ECF No. 7.)

On August 17, 2020, the court screened the Complaint and found that Plaintiff stated cognizable claims against defendants Ottsman and Chavez for use of excessive force against Plaintiff in violation of the Eighth Amendment, but no other claims. (ECF No. 17.) The court

issued a screening order requiring Plaintiff to <u>either</u> file an amended complaint <u>or</u> notify the court of his willingness to proceed only on the cognizable excessive force claims against defendants Ottsman and Chavez. (<u>Id.</u>) On September 14, 2020, Plaintiff filed the First Amended Complaint. (ECF No. 18.)

On September 25, 2020, the court screened the First Amended Complaint and issued an order requiring Plaintiff to either (1) file a Second Amended Complaint, or (2) notify the court of his willingness to proceed only with the excessive force claims against defendants Ottsman and Chavez found cognizable by the court. (ECF No. 20.) On October 8, 2020, Plaintiff filed the Second Amended Complaint which is now before the court for screening. (ECF No. 21.) 28 U.S.C. § 1915.

## II.     SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>,

572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.   SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Correctional Institution (CCI) in Tehachapi, California, in the custody of the California Department of Corrections and Rehabilitation where the events at issue in the Second Amended Complaint allegedly took place. Plaintiff names as defendants W. Sullivan (Warden), Lieutenant E. Barthelmes, Sergeant (Sgt.) Clayton, Sgt. Gratokoski, Sgt. Cardenas, Correctional Officer (C/O) I. Ottsman, C/O V. Chavez, Dr. Caldron, and S. Jeffrey (RN) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

On August 10, 2018, Plaintiff was walking through the prison yard to the law library. At approximately 2pm, defendants Sergeants Clayton, Gratokoski, and Cardenas ordered defendants Ottsman and Chavez to approach Plaintiff because he looked a little unbalanced. Plaintiff suffers from a disability of his legs. Defendants collectively summoned several other correctional staff. Plaintiff was harassed with obscenities by staff. Plaintiff replied to Defendants that he was not breaking the law, just going to the law library. Defendants again replied with jokes about Plaintiff's balance and how stupid he walks. Defendants handcuffed Plaintiff and performed a routine strip search to embarrass prisoners, but this time Defendants thought Plaintiff may be under the influence of alcohol and did not believe he was disabled. Defendants took him to an isolated part of the prison, still in handcuffs, and threw him to the ground. Then defendants Ottsman and Chavez punched and kicked him. Plaintiff replied that he wanted to talk to superiors because this was an injustice and they were not supposed to treat anyone this way. Defendants made statements such as, "Look stupid mother fu\*\*er, this is our prison, our gang, and we can do whatever we want." (ECF No. 21 at 5.) Defendants Clayton, Gratokoski, and Cardenas arrived and instead of summoning medical assistance, they ordered that more pain be applied to Plaintiff.

Defendants Clayton, Gratokoski, and Cardenas ordered correctional officers to stop and

frisk Plaintiff, then ordered them to physically brutalize Plaintiff for complaining. The officers dragged Plaintiff from the floor and defendants Chavez and Ottsman struck and kicked Plaintiff all over his body while he was in handcuffs, then refused to summon medical assistance. Plaintiff put in a medical request after the brutal attack and was ignored by defendants RN Jeffrey and Dr. Caldron, who were not properly trained to summon medical assistance or to refrain from altering and covering up records. It took forever before Plaintiff was given an appointment for his medical needs. Plaintiff was bleeding severely through his nose, had severe pain to his legs and suffered a concussion and a dented forehead. Plaintiff had a serious medical need, and failure to treat Plaintiff's condition resulted in further significant injury and unnecessary wanton infliction of pain. Defendants Caldron's and Jeffrey's responses to Plaintiff were deliberately indifferent when they ignored all of the medical requests Plaintiff sent them to cover up medical records and abuse their medical power. The delay in Plaintiff receiving medical treatment led to severe chronic pain. Plaintiff is unable to enjoy regular things prisoners do, and he now suffers from mental and emotional distress due to flashbacks and substantial risk of losing his life and serious harm.

As relief, Plaintiff seeks monetary damages, including punitive damages, a declaratory judgment, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d

1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133,

1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."  Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation."  Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

The court finds that Plaintiff states a cognizable medical claim against Defendants Chavez and Ottoman for failing to summon medical care for Plaintiff after they punched and

kicked Plaintiff, causing severe bleeding from his nose, pain to his legs, a concussion, and a dented forehead.

Plaintiff alleges that Dr. Caldron and Nurse Jeffrey ignored the requests for medical care he sent them. However, Plaintiff fails to allege *facts* showing that defendants Caldron and Jeffrey were aware of Plaintiff's medical needs and yet deliberately responded unreasonably. Plaintiff alleges that it "took forever" for him to get a medical appointment, but he does not explain how long it actually took (hours, days, weeks), who he finally met with, or what treatment he received. Thus, Plaintiff's allegations against Dr. Caldron and Nurse Jeffrey are conclusory and insufficient to state an Eighth Amendment medical claim against him.

Therefore, the court finds that Plaintiff states medical claims under the Eighth Amendment against defendants Chavez and Ottoman, but not against any of the other Defendants.

**B.     Excessive Force – Eighth Amendment**

What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court find that Plaintiff states cognizable claims against defendants Ottsman and Chavez, for use of excessive force against Plaintiff in violation of the Eighth Amendment.

Plaintiff also states claims for use of excessive force against Defendants Clayton, Gratokoski, and Cardenas for ordering defendants Ottsman and Chavez to physically brutalize Plaintiff when he complained about the way he was being treated.  There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted), and each Defendant is only liable for his or her own misconduct.  Here, Plaintiff has demonstrated that defendants Clayton, Gratokoski, and Cardenas through their own *individual actions*, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77 (emphasis added). The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44.  Here, defendants Clayton, Gratokoski, and Cardenas set in motion the excessive force acts by defendants Ottsman and Chavez against Plaintiff by ordering that Plaintiff be brutalized.

Therefore, the court finds that Plaintiff states cognizable claims against defendants Ottsman, Chavez, Clayton, Gratokoski, and Cardenas for use of excessive force in violation of the Eighth Amendment.

    **C.**    **Equal Protection -- Discrimination**

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87

L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical

///

treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"' (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, the court finds that Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### D. Cover Up

Plaintiff alleges that defendants Dr. Caldron and Nurse Jeffrey covered up Plaintiff's medical treatment by altering records. To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be

causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

///

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

Therefore, the court finds that Plaintiff fails to state a cognizable claim against any of the defendants participating in a cover up.

### E. Verbal Harassment

Plaintiff is advised that mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even verbal threats, without more, do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Therefore, the court finds that Plaintiff fails to state a claim against any of the defendants for verbal harassment against him.

### F. State Law Claims

Plaintiff alleges that defendants Caldron and Jeffrey were not properly trained to summon medical assistance or to refrain from altering and covering up records. These are state law claims. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law

claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi, 839 F.2d at 627. Plaintiff has not done so.

Therefore, the court finds that Plaintiff fails to state any claims for violation of state law.

**G.    Declaratory Relief**

Besides monetary damages and costs of suit, Plaintiff requests a declaratory judgment. A request for declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

Therefore, the court finds that Plaintiff's claim for a declaratory judgment should be dismissed.

**V.    RECOMMENDATIONS AND CONCLUSION**

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Second Amended Complaint against Defendants Ottsman and Chavez on Plaintiff's medical claims under the Eighth Amendment; and against Defendants Ottsman, Chavez, Clayton, Gratokoski, and Cardenas for use of excessive force under the Eighth Amendment.

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    This case proceed against Defendants Ottsman and Chavez on Plaintiff's medical

   claims under the Eighth Amendment; and against Defendants Ottsman, Chavez, Clayton, Gratokoski, and Cardenas for use of excessive force under the Eighth Amendment, and all other claims and defendants be dismissed from this action based on Plaintiff's failure to state a claim;

2. Defendants W. Sullivan (Warden), Lieutenant E. Barthelmes, Dr. Caldron, and S. Jeffrey (RN) be dismissed from this action based on Plaintiff's failure to state any claims against them;

3. Plaintiff's claims for violation of equal protection, verbal harassment, cover up of records, declaratory relief, and state law violations be dismissed from this action based on Plaintiff's failure to state a claim; and

4. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service.

  These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 29, 2021**     /s/ Gary S. Austin
                UNITED STATES MAGISTRATE JUDGE